IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**STEVE LIVNEH,**                                      Case No. 3:15 CV 2323

      Plaintiff,

      v.                                                   Magistrate Judge James R. Knepp, II

**VILLAGE OF OAK HARBOR, et al.,**

      Defendants.                                     MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Pending before the Court are three separate motions for summary judgment, filed by

Defendants Village of Oak Harbor (Docs. 43, 44), Ottawa County (Doc. 45), and Salem Township

(Doc. 56). Plaintiff Steve Livneh ("Plaintiff") filed opposition to each. (Docs. 46, 47, 58).

Defendants filed replies. (Docs. 53, 54, 59). Jurisdiction is proper under 28 U.S.C. § 1332. The

parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. §

636(c) and Civil Rule 73. (Doc. 11). For the reasons discussed below, the Court GRANTS the

motions for summary judgment. (Docs. 43, 45, 56).

## BACKGROUND

Viewing the facts in the light most favorable to Plaintiff, the background of this case is as

follows. Plaintiff sustained injuries from a single-vehicle accident occurring at approximately 4:00

p.m. on April 12, 2015, in the Village of Oak Harbor. (Doc. 10, at 2). Plaintiff was riding his

motorcycle at approximately fifteen miles per hour and traveling northbound on North Benton

Street approaching a set of railroad tracks which were raised up on a hill, impairing his ability to

see on the other side of the tracks. *Id.* On the other side was a 90-degree left turn in which North

Benton Street dead-ended into Christiansen Road. *Id.* at 3. Plaintiff saw a sign with an arrow pointing down on the other side of the tracks, which he presumed had to do with the railroad system. (Doc. 41, at 59 & Doc. 10, at 4). As he drove over the tracks, he was surprised by the sharp turn, lost control of his bike, and crashed. (Doc. 10, at 2). There was not a sign warning of the turn on North Benton Street, but there was the aforementioned sign at the intersection which ostensibly showed an arrow pointed down at the time of the accident. *Id.*[1] A passerby, David Keeton, traveling north on North Benton Street at approximately 4:30 p.m., came across Plaintiff, unconscious, "dragged the motorcycle off of Plaintiff", "dragged Plaintiff to the side of the road", and called emergency services. *Id.* at 4-5; *see also* Keeton deposition, Doc. 42, at 15-22. Mr. Keeton testified he noticed the arrow on the road sign pointed down, rather than to the left, due to a missing bolt. (Doc. 10, at 5); *see also* Keeton deposition, Doc. 42, at 24-25. Plaintiff was taken to the hospital for treatment, and subsequently transferred to another hospital. (Doc. 10, at 3-4).

Plaintiff, a Canadian citizen, brings negligence claims against Defendants for failure to maintain the left turn arrow sign and failure to install additional warning signs leading up to the turn. (Doc. 10).[2]

---

1. This fact is disputed by Defendants and is discussed further below.
2. In the Amended Complaint, under the sole count of negligence, Plaintiff asserts:

> 49. Plaintiff incorporates his prior allegations.

> 50. Defendants owed Plaintiff a duty of care to keep public roads in repair and to afford the public a safe means of travel.

> 51. Defendants undertook a duty of care when they maintained the area surrounding the accident site, including without limitation the proper signage or lack thereof.

> 52. In particular, on information and belief, Defendant Salem Township and Defendant Village of Oak Harbor undertook to maintain and failed to maintain the signage and the area surrounding the accident site.

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or

---

53. In particular, Defendant Ottawa County is statutorily responsible for maintaining the subject roads. O.R.C. 5543(A)(1).

54. Defendants breached that duty of care.

55. Defendants' conduct herein was negligence *per se*.

56. Defendants' breach caused Plaintiff to suffer serious injuries to his property and person and such damages included mental anguish, pain and suffering.

57. Defendants' conduct with respect to their duty of care to keep public roads in repair or to remove obstructions was not within the discretion of the employee with respect to policy-making, planning or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.

58. Defendants conduct with respect to their duty of care to keep public roads in repair or to remove obstructions was not a result of the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities and other resources.

59. The failure to repair the sign at the intersection of Benton Street and Christiansen Road was not decision that required a high degree of official discretion.

60. Defendants' duty with respect to the signage at the scene is set in the Manual of Uniform Traffic Control Devices for Streets and Highways.

61. Indeed, the lack of signage prior to and at the intersection of Benton Street and Christiansen Road directly violates mandatory provisions of the Ohio Manual of Uniform Traffic Control Devices for Streets and Highways.

(Doc. 10, at 6-8).

determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

**DISCUSSION**

The three Defendants, in separate motions for summary judgment, make similar arguments. Defendant Village of Oak Harbor ("the Village") alleges: (1) it had no duty to maintain the sign in question; and (2) it is immune from liability regarding the placement additional warning signs leading up to the curve. Defendant Ottawa County ("the County") argues that: (1) contrary to Plaintiff's assertion in the Complaint, Ohio Revised Code ("O.R.C.") § 5543.01(A)(1) imposes no duty to install, maintain, or repair the signs at issue; (2) regardless of which political subdivision is responsible, immunity applies; (3) the *Scott v. Harris* rule negates Plaintiff's claim of negligence; and (4) the County is not *sui juris* and, therefore, cannot be sued. (Doc. 45). Finally, Defendant Salem Township ("the Township") argues: (1) the *Scott v. Harris* rule negates Plaintiff's negligence claim; (2) it is entitled to immunity; and (3) it did not breach a duty owed to Plaintiff. (Doc. 56-1). For the reasons set forth below, the Court finds the County is entitled to summary judgment as Plaintiff has not shown it had a duty; and the Village and Township are entitled to summary judgment because they have shown they have immunity.

<u>Duty Owed to Plaintiff</u>

Plaintiff brings a single claim of negligence against three Defendants: the Village, the County, and the Township. (Doc. 10, at 6-8). He alleges each breached a duty of care and is,

therefore, negligent *per se*. *Id.* To establish a negligence claim in Ohio, "the plaintiff must show

(1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately resulting therefrom."

*Armstrong v. Best Buy Co.*, 99 Ohio St. 3d 79 (Ohio 2003). "Where a legislative enactment imposes

a specific duty for the safety of others, failure to perform that duty is negligence *per se*." *Chambers*

*v. St. Mary's School*, 697 N.E.2d 198, 201 (Ohio 1998). In effect, "the application of negligence

*per se* effectively reduces the elements that a plaintiff must prove in a negligence action." *Id.* In

Ohio,

> In order to defeat a motion for summary judgment brought in a negligence action,
> it is incumbent upon the plaintiff to identify a duty owed to plaintiff by the
> defendant; further, there must be sufficient evidence, 'considered most favorably
> to the plaintiff, to allow reasonable minds to infer that the duty was breached, that
> the breach of that duty was the proximate cause of the plaintiff's injury and that the
> plaintiff was injured.'

*Mullens v. Binsky*, 719 N.E.2d 599, 602-03 (10th Dist. Ohio 1998) (quoting *Nagy v. Wallis* (Apr.

27, 1995), Cuyahoga App. No. 66989, unreported, 1995 WL 248524).

The relevant statutory provisions at issue regarding Plaintiff's negligence *per se* claim are

O.R.C. § 5543.01(A)(1) and O.R.C. § 4511.11(A). [3]

---

3. The Court must determine whether it is necessary to address statutes not mentioned in Plaintiff's Amended Complaint. Here, Plaintiff appears to have first raised an argument regarding § 4511.11(A) in a discovery dispute, *see* Doc. 34-1, but did not amend his complaint to include such a claim. "The issue in a challenge to the sufficiency of a pleading is notice." *Carter v. Ford Motor Co.*, 561 F.3d 562, 565 (6th Cir. 2009). The Rules of Civil Procedure require a "'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "A court must construe pleadings 'so as to do justice,' Fed. R. Civ. P. 8(e), and 'liberally in order to prevent errors in draftsmanship from barring justice to litigants.'" *Carter*, 561 F.3d at 565 (quoting *Ritchie v. United Mine Workers of Am.*, 410 F.2d 827, 833 (6th Cir. 1969). At this stage of litigation, however, the Court need not liberally construe the complaint. "Once a case has progressed to the summary judgment stage . . . 'the liberal pleading standard . . . and [the Federal Rules] are inapplicable.'''" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 787-88 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). A plaintiff may not "expand [his] claims to assert new theories . . . in response to summary judgment . . .". *Bridgeport Music,*

Ohio Revised Code § 5543.01, entitled "General powers and duties of county engineer; hiring of independent professional engineer by township", provides:

(A) Except as provided in division (B) of this section, the county engineer shall have general charge of the following:

> (1) Construction, reconstruction, improvement, maintenance, and repair of all bridges and highways within the engineer's county, under the jurisdiction of the board of county commissioners, except for those county roads the board places on nonmaintained status pursuant to section 5541.05 of the Revised Code;
>
> (2) Construction, reconstruction, resurfacing, or improvement of roads by boards of township trustees under sections 5571.01, 5571.06, 5571.07, 5571.15, 5573.01 to 5573.15, and 5575.02 to 5575.09 of the Revised Code;
>
> (3) Construction, reconstruction, resurfacing, or improvement of the roads of a road district under section 5573.21 of the Revised Code.

(B) For any particular project, after notifying the county engineer, the board of township trustees of a township that has adopted a limited home rule government under Chapter 504 of the Revised Code may hire an independent professional engineer to be in charge of those activities listed in division (A)(2) of this section. The county engineer shall review all of the independent professional engineer's plans for improvements and provide the board of township trustees with comments on those plans within ten working days after receiving them. The county engineer shall monitor all plans for improvements in order to maintain compliance with existing construction standards and thoroughfare plans, and coordinate construction timelines within the county.

(C) The county engineer may not perform any duties in connection with the repair, maintenance, or dragging of roads by boards of township trustees, except that, upon the request of any board of township trustees, the county engineer shall inspect any road designated by it and advise as to the best methods of repairing, maintaining, or dragging that road.

---

*Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007). Because all three defendants have addressed the statute, and Plaintiff has responded, in the interest of judicial efficiency, the undersigned will address § 4511.11(A) even though it is not included in Plaintiff's Amended Complaint.

Ohio Revised Code § 4511.11, entitled "Local authorities' traffic control device placement and maintenance", provides:

> (A) Local authorities in their respective jurisdictions shall place and maintain traffic control devices in accordance with the department of transportation manual for a uniform system of traffic control devices, adopted under section 4511.09 of the Revised Code, upon highways under their jurisdiction as are necessary to indicate and to carry out sections 4511.01 to 4511.76 and 4511.99 of the Revised Code, local traffic ordinances, or to regulate, warn, or guide traffic.

For the reasons discussed below, the undersigned finds Plaintiff has established the Village and the Township owed him a duty. However, the undersigned also concludes Plaintiff has failed to show the County owed him a duty.

### *Defendant Village of Oak Harbor*

First, the Village alleges it owed Plaintiff no duty with regard to the sign in question, and is therefore entitled to summary judgment on Plaintiff's negligence claim. (Doc. 44, at 6-8). The Village argues the sign was the responsibility of the Township alone and, as such, the Village owed no duty to Plaintiff for the installation or maintenance of the sign. *Id.* at 7-8. Plaintiff responds that the Village had a duty to place and maintain signs pursuant to O.R.C. § 4511.11(A). (Doc. 46, at 13). For the reasons discussed below, the undersigned agrees with Plaintiff.

In support of its claim that it owed Plaintiff no duty, the Village points to several undisputed facts: (1) the Township's admission it was exclusively responsible for the sign (James Karr deposition, Doc. 38, at 16; Paul Lacumsky deposition, Doc. 40, at 46; Village Administrator R. Genzman deposition, Doc. 39, at 8); (2) at the time of the accident, the sign had "Salem Township" written on its back, which was typical of township owned signs (Lacumsky deposition, Doc. 40, at 18-19, 38); (3) the Township installed the sign in question sometime between 2008 and 2010. (Doc. 34-1, at 43; Lacumsky deposition, Doc. 40, at 18, 21); (4) Lacumsky, a Township maintenance worker made the decision as to sign placement and decided not to place it before the

railroad tracks because of potential motorist confusion due to the presence of small side road next to the tracks (Lacumsky deposition, Doc. 40, at 19, 22, 36-37); and (5) representatives from both the Township and the Village testified the Township has been responsible for the maintenance and repair of the sign for some time, including at the time of this incident (Genzman deposition, Doc. 39, at 8, 16-17; Lacumsky deposition, Doc. 40, at 45-46; Karr deposition, Doc. 38, at 20).

However, the Village also admits that the sign was physically located on Village property, and, because Plaintiff was traveling northbound on the east side of the road, he was traveling on Village property. (Doc. 44, at 7-8) (citing Genzman deposition, Doc. 39, at 7; County Engineer R. Lajti, Jr., deposition, Doc. 37, at 25, Lacumsky deposition, Doc. 40, at 19). Even so, the Village contends it owed no duty to Plaintiff because "although [the sign] is physically on Village property, it is a Salem Township sign." (Doc. 44, at 8) (citing Lacumsky deposition, Doc. 40, at 19).

Ohio Revised Code § 4511.11(A) provides: "Local authorities in their respective jurisdictions shall place *and maintain* traffic control devices . . . ." Even though the Township both placed and maintained the sign in question, because it was physically located on Village property, the Village had a duty to maintain it pursuant to O.R.C. § 4511.11(A). Just because the Village did not actually maintain the sign, does not mean it did not have a responsibility to do so pursuant to the statute. In fact, Randy Genzman, Village Administrator testified: "We repair, replace, and I guess add or subtract signs where needed by ordinance inside the Village of Oak Harbor . . ." (Genzman deposition, Doc. 39, at 9).

The Village's arguments to the contrary are unpersuasive. The Village relies on *Dietz v. Ohio Dept. of Transp.*, Ohio Ct. of Cl. No. 2010-07563, 2010-Ohio-6651, but that case is distinguishable. In *Dietz*, a driver brought suit against the Ohio Department of Transportation ("ODOT") for alleged damage to his vehicle caused by a rock thrown from a lawn mower on the

berm of the interstate. *Id.* at ¶ 1. The court, in finding plaintiff failed to prove ODOT had a duty, noted ODOT hired an independent contractor to perform mowing operations on that stretch of roadway. *Id.* at ¶ ¶ 2-3. Here, the Village does not assert that sign installation was formally delegated to the Township, but rather simply that the Township had installed and maintained the signs. *See* Genzman deposition, Doc. 39, at 16 (Q: "Do you know if there is an agreement between Oak Harbor and Salem Township about sign maintenance?"; A: "I'm not aware of any agreement." Q: "It's just the way it's done?"; A: "That's correct."). The other cases the Village points to for support of its lack-of-duty claim are similarly distinguishable from the instant case. *See Hoffman v. Waste Mgmt., Inc.*, 1988 WL 56514 (10th Dist. Ohio Ct. App.) (the land adjacent to the accident site was owned by the county and leased to another entity, but plaintiff failed to show the entity had an affirmative duty to maintain the portion of road at issue); *Lewis v. Ohio Dept. of Transp.*, Ohio Ct. of Cl. No. 2015-00094-AD, 2015-Ohio-4894, ¶¶6-7 (finding defendant could not be held liable because it "had no responsibility to maintain [the] road"); *Bird v. Ohio Dept. of Transp.*, Ohio Ct. of Cl. No. 2010-09078-AD, 2010-Ohio-6678, ¶11 (dismissing the case because "[t]he site of the damage-causing incident was not the maintenance jurisdiction of defendant."). Here, the sign was indisputably on Village property.

Therefore, the undersigned finds the Village owed Plaintiff a duty to maintain the sign in question under § 4511.11(A) ("Local authorities *in their respective jurisdictions* shall place *and maintain* traffic control devices . . . .") (emphasis added).[4] The Village's motion for summary judgment on these grounds is denied.

---

4. The Village's argument that mandatory duty arising under the Ohio Manual of Uniform Traffic Control Devices ("OMUTCD") to install additional signs warning of the curve ahead on the east side of North Benton Street is a governmental function (Doc. 44, at 17-19), will be addressed in-depth below in the immunity section.

*Defendant Ottawa County*

The County similarly argues it is entitled to summary judgment because it, too, owed no duty to Plaintiff pursuant to the sole negligence claim. The County argues, contrary to Plaintiff's assertion in the Amended Complaint (Doc. 10, at 6-7), O.R.C. § 5543.01(A)(1) imposes no duty on it to install, maintain, or repair the signs at issue (Doc. 45, at 5-10). Plaintiff responds that, pursuant to O.R.C. § 4511.11, the County had a statutory duty to place and maintain the sign in question. (Doc. 47, at 5). For the reasons discussed below, the undersigned agrees with the County.

*Ohio Revised Code § 5543.01*

The County explains that § 5543.01, cited by Plaintiff, speaks to "construction, reconstruction, improvement, repair, and maintenance of roads and highways", rather than "placement or maintenance of signs." (Doc. 45, at 7). The County also argues the statute should be interpreted to mean it is responsible only for county roads "not state or townships roads that happen to be located within the County[]", adding "[t]hat interpretation is not just obvious but also essential, if the statute is to be harmonized with Ohio R.C. §§ 5571.02[,] 5535.01(C)[,] and 5535.08(A), all of which make it clear that the township, state[,] and county each are responsible for maintaining only their own roads." (Doc. 54, at 3). Plaintiff only briefly addresses the statute (under which he brought his theory of negligence) by noting: "Ottawa County has [a] general charge of maintenance and repair of all highways within the engineer's county." (Doc. 47, at 3). The County does not dispute the roads are within the county limits, but states the roads are not county roads, but rather a Township road (Christiansen Road) and a shared Village/Township road (North Benton Street). (Doc. 45, at 7). Plaintiff concedes both roads are Township roads. *See* Doc. 47, at 1.

First, the undersigned agrees with the County that § 5543.01 is not directly on point in this case and does not impose a duty on the County to place or maintain road signs. The statute speaks to "[c]onstruction, reconstruction, improvement, maintenance, and repair of all bridges and highways within the engineer's county, under the jurisdiction of the board of county commissioners, except for those county roads the board places on nonmaintained status . . ." O.R.C. § 5543.01(A)(1). It does not speak to the placement and maintenance of road signs and Plaintiff has pointed to nothing to show the statute has been interpreted to include this type of claim.

Second, even if the statute could be interpreted to include maintenance and placement of road signs, it imposes no such duty on the County. *See Isreal v. Jefferson Twp. Bd. of Trustees*, 1990 WL 205115, at *3 (2nd Dist. Ohio Ct. App.). In *Isreal*, the plaintiff was injured when she "failed to negotiate a curve in the roadway and her automobile 'left the roadway' and collided with a utility pole." *Id.*, at *1. On appeal, the court found that while O.R.C. § 5571.05 imposed a general duty on the county engineer to "*supervise* and direct township trustees with regard to the maintenance and repair of townships roadways", O.R.C. § 5543.01 imposed no duty on the county engineer to "perform the maintenance and repair himself." *Id.*, at *3 (emphasis in original). The court concluded plaintiff failed to establish a negligence claim because, "[i]n fact, [the county engineer] may not perform any duties connected with the maintenance and repair of township roadways unless specifically requested by the board of township trustees." *Id.* Indeed, township trustees are responsible for maintenance of township roads and there is no evidence the Township trustees in this case made such a request. *See* O.R.C. §§ 5571.02, 5535.01. Thus, the Court agrees with the County that O.R.C. § 5543.01 imposes no duty on it with regard to the sign at issue in this case. *See also Franks v. Sandusky Twp. Bd. of Trustees*, 1992 WL 66561, at *6 (6th Dist. Ohio Ct.

App.) ("[T]he county engineer may not perform any duties in connection with repair or maintenance unless such is requested by the township trustees." (citing O.R.C. § 5543.01)).

*Ohio Revised Code § 4511.11*

The County also argues Plaintiff has not established the County owed him a duty under O.R.C. § 4511.11. As noted above, § 4511.11(A) states:

> Local authorities in their respective jurisdictions shall place and maintain traffic control devices in accordance with the department of transportation manual for a uniform system of traffic control devices, adopted under section 4511.09 of the Revised Code, upon highways under their jurisdiction as are necessary to indicate and to carry out sections 4511.01 to 4511.76 and 4511.99 of the Revised Code, local traffic ordinances, or to regulate, warn, or guide traffic.

Plaintiff contends that because the sign is in the County, § 4511.11(A) imposes a duty upon the County to place and maintain traffic controls "in accordance with the [department of transportation manual]" prescribed by O.R.C. § 4511.09. (Doc. 47, at 5). Plaintiff also notes that O.R.C. § 4511.11(D) states that all traffic control devices shall conform to the manual, without reference to "local authority". *Id.* That statute states:

> All traffic control devices erected on any street, highway, alley, bikeway, or private road open to public travel shall conform to the state manual.

*Id.* at § 4511.11(D).

However, the Ohio Supreme Court has determined a county engineer is not a "local authority" for purposes of O.R.C. § 4511.11. *Royce v. Smith*, 429 N.E.2d 134, 139 (Ohio 1981). In that case, the court affirmed dismissal of the claim—regarding maintenance of a stop sign— against the county engineer, but determined the same claim against the township could proceed. *Id.* Plaintiff's attempt to distinguish *Royce* on grounds that: (1) "it did not deal with the general mandate that all traffic control devices shall conform to the Manual" pursuant to O.R.C. § 4511.11(D); and (2) in that case suit was brought against the county engineer, not the county as is

the case here (Doc. 47, at 7), is unavailing. The Court finds these distinctions as without consequence. As discussed further below with regard to immunity, the Court rejects Plaintiff's statutory construction argument about § 4511.11(D) making the entire Manual mandatory.

Moreover, with regard to the County, Ohio law holds that "[a] County is presumed *not to have authority* to regulate in a particular area, unless a statute affirmatively authorizes the regulation." *Geauga v. Cty. Bd. of Comm'rs v. Munn Rd. Sand & Gravel*, 67 Ohio St. 3d 579, 583 (1993) (emphasis in original); *see also id.* at 582 ("Counties . . . may exercise only those powers affirmatively granted by the General Assembly."). Ohio statutes divide responsibility for control and maintenance of roads among the state, counties, and townships. *See* O.R.C. § 5571.02 ("The board of township trustees shall have control of the township roads of its township, and . . . shall keep them in good repair. The board of township trustees, with the approval of the board of county commissioners, or the director of transportation may maintain or repair a county road, or intercountry highway, or state highway within the limits of its township."); O.R.C. § 5535.01 (section entitled "Classes of highways" and distinguishing between "(B) County roads include all roads which are or may be established as part of the county system of roads . . . which shall be known as the county highway system. Such roads shall be maintained by the board of county commissioners" and "(C) Township roads include all public highways other than state or county roads. The board of township trustees shall maintain all roads within its township."); O.R.C. § 5535.08(A) ("The state, county, and township shall each maintain its roads . . . however, the county or township, by agreement between the board of county commissioners and the board of township trustees, may contribute to the repair and maintenance of the roads under the control of the other."). These statutes make clear that the county only holds maintenance responsibility for county roads. Thus, § 4511.11(A) referencing "local authorities in their respective jurisdictions", cannot apply

13

the way Plaintiff asserts it does here—to County responsibility for maintenance of a Township road.

The Court finds the County also had no duty under § 4511.11(A). The statute reads that "*Local authorities* in their respective jurisdictions shall place and maintain traffic control devices . . .". O.R.C. § 4511.11(A) (emphasis added). A county engineer is not a "local authority" for purposes of § 4511.11(A). *See Royce*, 429 N.E.2d at 139. Moreover, the County only has jurisdiction over county roads. *See Geauga* 67 Ohio St. 3d at 582-83; O.R.C. §§ 5571.02, 5535.01, 5535.08(A). Thus, the Court finds the County had no duty to maintain the sign in question or place additional warning signs under § 4511.11. Further, as the County asserts (and Plaintiff does not deny) discovery has produced no evidence connecting it to the installation or maintenance of the roads or sign in question. (Doc. 45, at 3- 5). The County has therefore not assumed any duty with regard to the sign. Because the County has no duty to Plaintiff with regard to the placement or maintenance of the sign in question, its motion for summary judgment (Doc. 45) is GRANTED.[5]

### *Defendant Salem Township*

The Township argues: (1) it did not breach a duty to Plaintiff (who it contends was a licensee) with regard to the sign in question because it was not wanton or willful in its conduct;

---

5. Although it is unnecessary to reach this argument because summary judgment is appropriate on the grounds discussed above, the undersigned notes that even if it owed Plaintiff a duty, the County is not *sui juris*, a defense that under Ohio law is not waivable. *See Black v. Hamilton Cty. Pub. Def. Comm'n,* 2013 WL 684394, at *4 (S.D. Ohio Feb. 25, 2013) ("Under Ohio law, a county may be sued when it has adopted a charter or alternative form of government, *see* Ohio Rev. Code § 301.22, or through its board of commissioners, *see* Ohio Rev. Code § 305.12." (internal citations omitted)); O.R.C. § 305.12 (stating Ohio counties are properly sued through their boards of commissioners); *see also Mollette v. Portsmouth City Council*, 863 N.E.2d 1092, 1098 (4th Dist. Ohio 2006) ("[W]hen a named defendant is not a legal entity, failure to raise the issue of that defendant's legal existence in a responsive pleading does not constitute a waiver of the issue."). This is, thus, an alternative basis on which the County is entitled to summary judgment.

and (2) it did not have a duty to place additional warning signs on the eastbound side of North Benton Street because that is Village property and thus, the Village's responsibility. (Doc. 56-1, at 16-19). Plaintiff responds: (1) the Township undertook a general duty when it erected the sign in question; and (2) the Township's argument it owes only the duty an owner owes a licensee is not correct because the Township is not the owner of the land where the sign was placed. (Doc. 58, at 14-15). For the reasons discussed below, the undersigned finds Plaintiff has established the Township owed him a duty of care.

Initially, Plaintiff waives argument the Township had a duty to place additional warning signs on North Benton Street by not responding to the argument. *See Hood v. Tenn. Student Assistance Corp.,* 319 F.3d 755, 760 (6th Cir. 2003) (internal citation and quotation marks omitted) (finding an argument not raised in briefs before the court waived).[6]

Next, the Court finds Plaintiff has presented evidence showing the Township assumed a duty of care. First, the Township took responsibility for the sign. (Karr deposition, Doc. 38, at 16; Lacumsky deposition, Doc. 40, at 46). Second, at the time of the accident, the sign had "Salem Township" written on its back, which was typical of township owned signs. (Lacumsky deposition, Doc. 40, at 18-19, 38). Third, the Township installed the sign in question. (Lacumsky deposition, Doc. 40, at 18, 21). Fourth, Paul Lacumsky, a Salem Township employee, testified he made the decision as to the sign placement. (Lacumsky deposition, Doc. 40, at 19, 22, 36-37). Fifth, representatives from both the Township and the Village testified the Township has been responsible for the maintenance and repair of the sign for some time, including at the time of this incident. (Genzman deposition, Doc. 39, at 8, 16-17; Lacumsky deposition, Doc. 40, at 45-46; Karr

---

6. Moreover, even if the argument were not waived, the Township is immune from liability for failure to install additional non-mandatory signs, as discussed further below in the immunity section. *See Green v. Columbus*, 2016 WL 853272, at *7 (10th Dist. Ohio Ct. App).

deposition, Doc. 38, at 20). Therefore, the Court finds Plaintiff has presented sufficient evidence showing the Township assumed a general duty of care, rather than, as the Township argues, the more limited duty of care owed to a licensee.

Immunity

All three Defendants contend they are immune from liability pursuant to Ohio Revised Code Chapter 2744. *See* Doc. 44, at 16-27, Doc. 45, at 10, Doc. 56, at 5-16.[7] Plaintiff responds that the "public roads exception" to immunity under § 2244.02(B)(3) applies, and Defendants are not immune. For the reasons discussed below, the undersigned agrees with Defendants, and finds the Village and Township are immune from liability.

Ohio Revised Code Chapter 2744 "sets out the method of analysis . . . for determining a political subdivision's immunity from liability." *Greene Cty. Agric. Soc. v. Liming*, 733 N.E.2d 1141, 1146 (Ohio 2000). Ohio courts apply a three-tiered analysis to evaluate Chapter 2744 immunity. O.R.C. § 2744.02; *Smith v. McBride*, 955 N.E.2d 954, 957-58 (Ohio 2011); *Green v. Columbus*, 2016 WL 853272, at *4 (10th Dist. Ohio Ct. App.). The first tier provides a general grant of immunity to political subdivisions from liability "in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." *McBride*, 955 N.E.2d at 957 (quoting O.R.C. § 2744.02(A)(1)). "The second tier of the analysis focuses on the five exceptions to immunity listed in R.C. 2744.02(B), which can expose a political subdivision to liability." *Id.* at 957-58. If an exception applies under the

---

7. Because the undersigned has already determined the County is entitled to summary judgment, only the immunity of the Township and the Village will be addressed below. However, even assuming arguendo that the County owed Plaintiff a duty, the analysis below regarding immunity would apply equally to the County.

second tier of the analysis, the third tier requires an assessment of whether any defenses in O.R.C. § 2744.03 apply to reinstate immunity. *Id.* at 958. The burden of proof rests on the political subdivision to establish general immunity, and then shifts to the plaintiff to demonstrate the applicability of an exception. *Green*, 2016 WL 853272, at *5.

Relevant to the instant case under the second tier of the analysis, O.R.C. § 2744.02(B)(3), the "public roads exception", provides:

> Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads, except that it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.

In 2003, O.R.C. § 2744.01(H), containing the definition of "public roads" was amended to specifically exclude traffic control devices unless such device is mandated by the OMUTCD:

> (H) "Public roads" means public roads, highways, streets, avenues, alleys, and bridges within a political subdivision. "Public roads" does not include berms, shoulders, rights-of-way, or traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices.

Subsequently, several Ohio courts have held that, pursuant to the § 2244.01(H) amendment, the § 2744.02(B)(3) "public roads" exception applies only to signs mandated by the OMUTCD. *Compare Walters v. Columbus,* 2008 WL 3878362, at *4 (10th Dist. Ohio Ct. App.) ("[T]he definition of 'public roads' does not include traffic control devices unless such are mandated by the OMUTCD.") *and Bibler v. Stevenson*, -- N.E. 3d --, 2016 WL 7645348, at *3 (Ohio 2016) ("[T]he stop sign falls outside the definition of a public road unless it is 'mandated by the Ohio manual of uniform traffic control devices' ('OMUTCD').")[8], *with Butler v. City Comm.*, 2011

---

8. In *Bibler*, unlike in the instant case, a statutory provision, O.R.C. § 4511.65(A) expressly required the stop sign at issue. The court therefore held that the stop sign fell within the definition of a public road for purposes of O.R.C. § 2744.02(B)(3), because, even if the OMUTCD did not

WL856997, at *2 (6th Dist. Ohio Ct. App.) (finding maintenance of a non-mandatory sign can implicate the (B)(3) exception, but not discussing the 2003 amendment); *see also Bonace v. Springfield Twp.*, 903 N.E.2d 683, 687-88 (7th Dist. Ohio 2008) (noting that by amending § 2744.01(H), "the legislature acted to narrow the exception to immunity, thus providing more protection to political subdivisions").

Additionally, Ohio courts have held the failure to erect a discretionary warning sign is not covered by the exception to immunity pursuant to O.R.C. § 2744.02(B)(3). *See, e.g., Green*, 2016 WL 853272, at *8-9. In *Green*, the court explained:

> {¶ 32} Even if we accept appellant's claim that, under the conditions that existed at the intersection on the date of the accident, OMUTCD required a 'Signal Ahead' sign on Woodward, the nonerection of a traffic signal is a governmental function for which the city is generally immune from liability. *See* R.C. 2744.01(C)(2)(f) and 2744.02(A)(2). Thus, the burden is on appellant to demonstrate that one of the exceptions to immunity applies. *Slane.* Appellant argues that, because the warning sign in question is mandated by OMUTCD, the exception set forth in R.C. 2744 .02(B)(3) applies. We disagree.

> \*\*\*

> {¶ 35} In seeking to impose liability on the city for the nonerection of the 'Signal Ahead' sign, appellant asks this court to expand the scope of political subdivision liability beyond that permitted under prior law even though the Supreme Court has explicitly instructed that the 2003 amendments to R.C. Chapter 2744 were intended to limit such liability. Based on our interpretation of the 2003 amendments, and given the case law cited above, we believe the General Assembly intended to foreclose any such liability when it removed the nuisance language from R.C. 2744.02(B)(3) and added the definition of 'public roads' now found in R.C. 2744.01(H). Accordingly, we hold that the exception to immunity under R.C. 2744.02(B)(3) does not apply to any negligent conduct of the city in failing to erect a 'Signal Ahead' sign at the intersection.

---

specifically require the stop sign at issue, "that the version of the OMUTCD at issue . . . mistakenly, inadvertently, or intentionally did not precisely align with the language of R.C. 4511.65 [mandating the stop sign at issue] does not mean that the stop sign at issue was not mandated. Clearly it was. R.C. 4511.65(A)." 2016 WL 7645348, at *3. By contrast, as discussed below, there is no specific statute on point requiring the sign at issue here.

2016 WL 853272, at *8-9. Therefore, pursuant to these cases, the "public roads" exception to immunity only applies if the sign was mandatory under the OMUTCD.

### Defendant Village of Oak Harbor

Here, the Village has shown it is entitled to general immunity pursuant to the first tier. It correctly notes that the "maintenance and repair of [ ] roads, highways . . . [and] streets . . . " and "[t]he regulation of traffic, and the erection or nonerection of traffic signs, signals, or control devices" are governmental functions protected by general immunity. O.R.C. § 2744.01(C)(2)(e), (j). The burden therefore shifts to Plaintiff to show the public roads exception, § 2744.02(B)(3) applies. Because, as noted above, the exception only applies to mandatory provisions of the OMUTCD, the undersigned turns to whether Plaintiff has identified such a mandatory provision governing the sign at issue.

### What Constitutes a Mandatory Provision of the OMUTCD – § 4511.11(A) & (D)

Plaintiff first argues the public roads exception applies because O.R.C. § 4511.11(A), read in conjunction with section (D), imposes mandatory compliance with the entire OMUTCD. (Doc. 46, at 14-16). Ohio Revised Code § 4511.11 provides:

> (A) Local authorities in their respective jurisdictions shall place and maintain traffic control devices in accordance with the department of transportation manual for a uniform system of traffic control devices, adopted under section 4511.09 of the Revised Code, upon highways under their jurisdiction as are necessary to indicate and to carry out sections 4511.01 to 4511.76 and 4511.99 of the Revised Code, local traffic ordinances, or to regulate, warn, or guide traffic.
>
> * * *
>
> (D) All traffic control devices erected on any street, highway, alley, bikeway, or private road open to public travel shall conform to the state manual.

Plaintiff's argument that these sections, read together, require mandatory compliance with the entire OMUTCD, including the discretionary provisions, is unpersuasive. (Doc. 46, at 19). The

Court agrees with the Village, and with Ohio caselaw, that §§ 4511(A) and (D) "merely require local authorities to use traffic devices pursuant to the instructions in the OMUTCD[]". (Doc. 43, at 3). *See Darby v. Cincinnati*, 2014 WL 2566285, at *2 (1st Dist. Ohio Ct. App.) (noting local authorities "must place and maintain traffic control devices according to the manual"); *Winwood v. Dayton*, 525 N.E.2d 808, 284-85 (Ohio 1988) (noting that pursuant to the OMUTCD, local authorities should have great discretion regarding installation of traffic control devices). "In accordance with the manual" therefore incorporates the manual's distinctions between mandatory and discretionary provisions. Similarly, the language in subsection (D), requiring that signs "conform to the manual", does not mandate compliance with all provisions of the OMUTCD, but rather only those provisions that the OMUTCD deems mandatory. Moreover, § 2744.01(H), excluding traffic control devices from the definition of "public roads" unless such devices "are mandated by" the OMUTCD confirms this reading of §§ 4511.11(A) and (D). Plaintiff, therefore, cannot rely on these sections to show an exception to immunity.

### Applicable Version of the OMUTCD

As a preliminary matter, to determine whether a mandatory provision applies, the Court must determine what version of the OMUTCD applies. Plaintiff argues the 2012 Manual is applicable because the accident occurred on April 12, 2015. (Doc. 46, at 22-24). The Village argues the 2012 version applies to Sections 2C.02 (Application of Warning Signs), 2C.05 (Placement of Warning Signs), and Table 2C-4 (Guidelines for Advance Placement of Warning Signs),[9] but asserts the 2005 version applies to other sections, including Sections 2C.06 and 2C.09, because these sections do not mandate compliance until December 31, 2019. (Doc. 44, at 18-24). Plaintiff

---

9. On its face, Table 2C-4 offers "guidelines" rather than mandatory requirements. Thus, the Court finds it unnecessary to address this table.

counters the December 2019 compliance date should not apply because it is a federal, rather than state, timeline. (Doc. 46, at 23). The 2012 version of the OMUTCD, however, incorporates the federal timeline and, thus the Court finds the December 31, 2019, compliance date is applicable here as it relates to Sections 2C.06 and 2C.09.[10] *See* 2012 OMUTCD, Table I-3, Page I-6.[11] The 2005 version of these sections, rather than the 2012 version, therefore applies here. However, Plaintiff does not address Sections 2C.06 and 2C.09 and, as such, waives argument relating to these sections. *Hood*, 319 F.3d at 760.

### *Did the Village Violate a Mandatory Provision of the OMUTCD?*

As an Ohio appellate court explained:

The OMUTCD contains mandatory, advisory, and permissive conditions, differentiated by the use of the terms 'shall,' 'should,' and 'may.' Standards using the word 'shall' are considered mandatory. Standards using the word 'should' are considered to be advising, but not mandating, the particular signage or other device. Standards using the word 'may' carry no requirement or recommendation.

*Webb v. Edwards*, 845 N.E.2d 530, 535 (4th Dist. Ohio Ct. App. 2005).

The potentially relevant provisions of the 2012 OMUTCD—from Chapter 2C ("Warning Signs and Object Markers")—state:

**Section 2C.01 <u>Function of Warning Signs</u>**

Support:

Warning signs call attention to unexpected conditions on or adjacent to a highway, street, or private roads open to public travel and to situations that might not be readily apparent to road users. Warning signs alert road users to conditions

---

10. This is significant because the 2012 version of these sections offer revised requirements for certain horizontal alignment warning signs. *See* 2012 OMUTCD, *available at* http://www.dot.state.oh.us/Divisions/Engineering/Roadway/DesignStandards/traffic/OhioMUTC D/Pages/OMUTCD2012_current_default.aspx.
11. *Available at* http://www.dot.state.oh.us/Divisions/Engineering/Roadway/DesignStandards/traffic/OhioMUTC D/Pages/OMUTCD2012_current_default.aspx.

that might call for a reduction of speed or an action in the interest of safety and efficient traffic operations.

* * *

## Section 2C.02 Application of Warning Signs

**Standard:**
**The use of warning signs shall be based on an engineering study or on engineering judgment.**

*Guidance:*
*The use of warning signs should be kept to a minimum as the unnecessary use of warning signs tends to breed disrespect for all signs. In situations where the condition or activity is seasonal or temporary, the warning sign should be removed or covered when the condition or activity does not exist.*

* * *

## Section 2C.05 Placement of Warning Signs

Support:

For information on placement of warning signs, see Sections 2A.16 to 2A.21.

The time needed for detection, recognition, decision, and reaction is called the Perception-Response Time (PRT). Table 2C-4 is provided as an aid for determining warning sign location. The distances shown in Table 2C-4 can be adjusted for roadway features, other signing, and to improve visibility.

*Guidance:*

*Warning signs should be placed so that they provide an adequate PRT. The distances contained in Table 2C-4 are for guidance purposes and should be applied with engineering judgment. Warning signs should not be placed too far in advance of the condition, such that drivers might tend to forget the warning because of other driving distractions, especially in urban areas.*

*Minimum spacing between warning signs with different messages should be based on the estimated PRT for driver comprehension of and reaction to the second sign.*

*The effectiveness of the placement of warning signs should be periodically evaluated under both day and night conditions.*

Option:

Warning signs that advise road users about conditions that are not related to a specific location, such as Deer Crossing or SOFT SHOULDER, may be installed in an appropriate location, based on engineering judgment, since they are not covered in Table 2C-4.

Plaintiff argues the Village is liable because the warning sign in question was placed without the mandatory engineering study or judgment required by 2C.02. (Doc. 46, at 23-24). Plaintiff contends, therefore, that the Village violated a mandatory requirement for basing sign placement on an engineering judgment. The Village counters it has no responsibility under this section because it did not install or maintain the sign in question, pursuant to the standard under 2C.02. (Doc. 53, at 12-13). It is indeed true that the Township, not the Village, installed the sign, so in this instance the Village did not "use" the warning sign for purposes of 2C.02 and was thus, not required by the OMUTCD to conduct an engineering study for placement of a sign it did not place. Importantly, moreover, "regardless of whether a political subdivision uses engineering studies or judgments, R.C. 2744.02(B)(3) cannot apply to the failure to maintain discretionary warning signs." *Shope v. Portsmouth*, 2012 WL 1203696, at *6 (4th Dist. Ohio Ct. App.) ("Simply put, when it comes to discretionary traffic control devices, failing to use engineering studies or judgments does not fit within the narrow exception of R.C. 2744.02(B)(3)."). Thus, in any event, the Village cannot be liable, based on 2C.02, when the underlying sign in question was discretionary, not mandatory. Because Plaintiff has not shown the Village violated any mandatory provision of the OMUTCD, Plaintiff cannot avail himself the "public roads" exception to immunity.

Thus, the Village is immune from liability for both the failure to place additional warning signs on North Benton Road, *see, Green*, 2016 WL 853272, at *8-9, and with regard to Plaintiff's

negligence claim about the sign in question. The Court therefore GRANTS the Village's motion for summary judgment. (Doc. 43).

### Defendant Salem Township

The Township similarly argues it is entitled to immunity pursuant to O.R.C. § 2744.02(A)(1) and none of the exceptions under § 2744.02(B) apply. (Doc. 56-1, at 5-16). Plaintiff responds the Township is not entitled to immunity because: (1) "placing a sign in another political subdivision is not a governmental or propriety function" under the first tier of immunity analysis; and (2) the public roads exception to immunity applies. (Doc. 58, at 15-23).

First, there is no dispute that Paul Lacumsky, an employee of the Township, placed the sign on Village property. However, Plaintiff's first argument is not well-taken because in Ohio an action can be considered a governmental function even if occurs outside a political subdivision's boundaries. *See Hunsche v. Loveland*, 729 N.E.2d 393, 395 (1st Dist. Ohio Ct. App. 1999) ("Nothing within the [immunity] statute limits governmental functions to actions that occur within the boundaries of the municipality."); *see also Perry v. City of East Cleveland*, 1996 WL 200558, at *4 (11th Dist. Ohio Ct. App.) (same). As noted above, the "maintenance and repair of [ ] roads, highways . . . [and] streets . . ." and "[t]he regulation of traffic, and the erection or nonerection of traffic signs, signals, or control devices" are governmental functions protected by general immunity. O.R.C. § 2744.01(C)(2)(e), (j). The Township, therefore, like the Village, has shown it meets the first tier of the immunity analysis.

Next, Plaintiff again argues the public roads exception to immunity applies as to the Township because O.R.C. § 4511.11(A) and (D) require mandatory compliance with the entire Manual. (Doc. 58, at 14-18). For the reasons stated above, the Court disagrees and finds Plaintiff is required to show a particular mandate in the OMUTCD to satisfy the (B)(3) exception.

Third, the Court finds 2C.02—requiring warning signs be placed based on an engineering study or judgment—is a mandatory provision that only applies *after* a discretionary warning sign is erected. The section uses the word "shall", which is mandatory language. *See Webb v. Edwards*, 845 N.E.2d 530, 535 (4th Dist. Ohio Ct. App. 2005) ("Standards using the word 'shall' are considered mandatory."). Similarly, 2C.05 provides on "support", "guidance", and "option[s]", but does not contain mandatory provisions for placing warning signs in the first instance. Moreover, as the *Shope* court explained: "Simply put, when it comes to discretionary traffic control devices, failing to use engineering studies or judgments does not fit within the narrow exception of R.C. 2744.02(B)(3)." 2012 WL 1203696, at *6

"Therefore, because the Traffic Manual does not mandate these particular warning signs, they are not public roads as contemplated by R.C. 2744.01(H)." *Id.* If the sign does not fall within the definition of "public roads", it cannot fall within the public roads exception. Thus, the Court finds the Township is immune from liability pursuant to O.R.C. §§ 2744.02 and the public roads exception does not apply.[12] As such, the Township's motion for summary judgment (Doc. 56) is GRANTED.

<u>*Scott v. Harris* Rule</u>

The County and the Township also allege they are entitled to summary judgment pursuant to the decision in *Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (finding it appropriate to consider uncontradicted video evidence in a summary judgment motion), because photographs taken shortly after the accident show the arrow sign correctly pointing left. However, because the Court finds

---

12. Because the undersigned finds the public roads exception does not apply, it is unnecessary to address herein the Township's additional argument that it is entitled to reinstated immunity under § 2744.03.

all three Defendants are entitled to summary judgment for other reasons, it is unnecessary to address this argument herein.

**CONCLUSION**

Upon review of the evidence and arguments, the Court finds there is no genuine issue of material fact and Defendants are entitled to summary judgment as a matter of law. Defendants' Motions for Summary Judgment (Docs. 43, 45, 56) are GRANTED for the reasons described herein, and the case is dismissed with prejudice.

IT IS SO ORDERED.

 s/James R. Knepp II
United States Magistrate Judge